THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TVI, INC., a Washington corporation, | CASE NO. C18-1461-JCC |
| Plaintiff, | ORDER |
| v. | |
| HARMONY ENTERPRISES, INC., a Minnesota corporation, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's motion to amend its complaint (Dkt. No. 19) and Defendant's motion for partial summary judgment (Dkt. No. 22). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Plaintiff's motion to amend (Dkt. No. 19) and DENIES Defendant's motion for partial summary judgment (Dkt. No. 22) as moot for the reasons explained herein.

## I.     BACKGROUND

Plaintiff is a global thrift retailer who purchases, resells, and recycles gently used clothing and other items. (Dkt. No. 20 at 1.) If clothing items remain unsold at Plaintiff's stores, Plaintiff uses balers to compress and compact the clothing into shipping containers for transport to and sale in developing countries. (*Id*.) Balers are used daily in all of Plaintiff's stores. (*Id*. at

2.) Defendant manufactures, markets, and sells balers. (Dkt. Nos. 1-2 at 2, 12 at 1.) Between 2013 and 2014, Plaintiff purchased 27 balers from Defendant, which Defendant installed in Plaintiff's stores. (Dkt. No. 20 at 2.)

On October 3, 2017, a baler manufactured and installed by Defendant at Plaintiff's Mt. Vernon store (the "Mt. Vernon baler") failed and "shot a large steel bolt across [Plaintiff's] production room where [Plaintiff's] employees were working." (*Id*.) No one was injured in the incident. (*Id*.) Plaintiff immediately notified Defendant and demanded that Defendant send a representative to inspect the Mt. Vernon baler, produce a detailed report of how the incident could have occurred, remove and dispose of the baler, and reimburse Plaintiff for the purchase and installation of a replacement baler. (*Id*. at 2, 8–15.) Plaintiff also demanded that Defendant inspect all other balers it had installed in Plaintiff's stores at Defendant's expense and produce a report on their stability and safety. (*Id*. at 8.)

On October 9, Defendant offered to take the Mt. Vernon baler back to Minnesota for an evaluation and to give Plaintiff a report on the evaluation's findings. (Dkt. No. 20 at 17.)[1] On October 10, Plaintiff sent Defendant a letter titled, "Notice of Defect and Potential Claim of Indemnity," which set forth the alleged facts of the Mt. Vernon baler's failure and noted that the failure put Plaintiff's employees at risk of harm. (*Id*. at 31–32.) Plaintiff conditioned its relinquishing of the Mt. Vernon baler to Defendant on Defendant's production of a report as to the cause of the failure. (*See id*. at 2, 31.)

The Mt. Vernon baler arrived at Defendant's Minnesota headquarters on October 19, 2017. (Dkt. No. 21 at 6, 9.) Defendant conducted a one- to two-hour inspection of the Mt. Vernon baler, during which it found unnecessary welds that contributed to the Mt. Vernon baler's failure. (*Id*. at 14–15, 25.) Defendant has since been unable to locate any notes from the inspection of the Mt. Vernon baler. (*Id*. at 12.)

---

[1] On October 9 and 10, 2017, Defendant's employees discussed how to weld certain parts of Defendant's balers to address issues with the balers. (Dkt. No. 27 at 5–7.)

On November 30, 2017, a visual inspection of a baler manufactured and installed by Defendant at Plaintiff's Flagstaff, Arizona business location (the "Flagstaff baler") revealed that the structural frame was unsound due to welding failures. (Dkt. No. 20 at 3, 34–39.) Plaintiff demanded that Defendant send a representative to inspect the Flagstaff baler, produce a detailed report of how the incident could have occurred, remove and dispose of the baler, and reimburse Plaintiff for the purchase and installation of a replacement baler. (*Id.* at 34–35.) Plaintiff also demanded that Defendant inspect all other balers it had installed in Plaintiff's stores at Defendant's expense and produce a report on their stability and safety. (*Id.*) On December 1, 2017, Plaintiff sent Defendant a letter titled "Second Notice of Defect and Potential Claim for Indemnity: Second Demand for Inspection," which set forth the alleged facts regarding the failure of the Flagstaff baler, stated that the failure put Plaintiff's employees at risk of harm, and reiterated Plaintiff's demands for reports on the failures of the Mt. Vernon baler and the Flagstaff baler. (*Id.* at 41–42.)

Defendant did not provide Plaintiff with reports on the Mt. Vernon baler and Flagstaff baler's failures. (*Id.* at 3.)[2] Plaintiff eventually removed all of Defendant's balers from Plaintiff's stores after Defendant did not provide the desired reports or perform inspect the other balers Plaintiff had purchased. (*Id.*) On January 17, 2018, Plaintiff's counsel sent Defendant a letter reiterating Plaintiff's prior demands and formally requesting that a litigation hold be placed on material related to the Mt. Vernon and Flagstaff balers. (*Id.* at 44–46.)

Defendant prepared a summary of its inspection of the Mt. Vernon baler in October or November 2017, which it shared with its counsel. (Dkt. No. 21 at 20–22.) Defendant did not share its summary with Plaintiff until Plaintiff brought this lawsuit. (Dkt. Nos. 20 at 4, 21 at 20–

---

[2] Defendant has acknowledged that its conclusions about the Mt. Vernon baler should have been sent to Plaintiff but were not. (Dkt. No. 21 at 16–17.) Defendant states that its failure to provide a report on the Mt. Vernon baler's failure to Plaintiff was unintentional, as its employee responsible for sending the report was diagnosed with cancer around the time he was supposed to send the report and passed away shortly thereafter. (*Id.* at 27–28; Dkt. Nos. 22 at 5, 23-2 at 22–23.)

22.) Defendant also did not notify Plaintiff that another of Defendant's balers had suffered a similar failure in 2017 until Defendant's Rule 30(b)(6) deposition. (Dkt. Nos. 20 at 4, 21 at 7.) In addition, although Defendant's Rule 30(b)(6) deponent stated that Defendant sent the Mt. Vernon baler to be scrapped in December 2017, Defendant's responses to Plaintiff's interrogatories indicate that it was picked up for scrapping in January or February 2018. (*Id*. at 19, 40, 61.) Defendant did not notify Plaintiff that the Mt. Vernon baler had been scrapped. (*Id*. at 29.)

In September 2018, Plaintiff brought suit against Defendant in state court, alleging a variety of Washington state law claims arising from Defendant's allegedly dangerous and defective balers. (*See generally* Dkt. No. 1-2.) Pursuant to Washington Superior Court Civil Rule 44.1, Plaintiff's complaint notified Defendant "of its intent to recover punitive damages in accordance with Minnesota Law." (*Id*. at 17.) On October 4, 2019, Defendant removed the case to this Court. (Dkt. No. 1.) Plaintiff now seeks leave to amend its complaint to assert a claim for punitive damages pursuant to Minnesota law. (Dkt. No. 19.) Defendant moves for partial summary judgment dismissing Plaintiff's proposed claim for punitive damages. (Dkt. No. 22.)

## II. DISCUSSION

### A. Motion to Amend Legal Standard

Typically, a court will freely grant leave to amend a complaint in the absence of undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *See* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court has discretion to grant or deny a request to amend, but must provide justification when it denies a request. *Foman*, 371 U.S. at 182. "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

//

**B.     Choice of Law**

The parties dispute whether Washington or Minnesota law applies to Plaintiff's proposed claim for punitive damages. (*See* Dkt. Nos. 19 at 10–13, 22 at 6–10, 26 at 5.) "In resolving conflict of law tort questions, Washington has abandoned the lex loci delicti rule and follows the Restatement (Second) of Conflict of Laws' most significant relationship test." *Singh v. Edwards Lifesciences Corp.*, 210 P.3d 337, 340 (Wash. Ct. App. 2009) (alterations removed) (citing *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976)). In determining which jurisdiction has the most significant relationship, the Court considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id*. (citing *Johnson*, 555 P.2d 997 at 1000). If the contacts of each jurisdiction are balanced, the Court "evaluate[s] the public policies and governmental interests of the concerned states." *Id*. at 341 (citing *Johnson*, 555 P.2d 997 at 1001–02). "Washington courts have held that these same choice of law principles apply to the issue of punitive damages." *Id*. at 341 (examining *Kammerer v. W. Gear Corp.*, 635 P.2d 708 (Wash. 1981); *Barr v. Interbay Citizens Bank of Tampa, Fla.*, 635 P.2d 441 (Wash. 1981)).

Plaintiff's alleged injuries arguably occurred in Plaintiff's business locations that used Defendant's balers, with the salient injury—the failure of the Mt. Vernon baler—having occurred in Washington. (*See* Dkt. No. 1-2 at 4–5.) Similarly, the contracts between the parties were generally performed outside of Minnesota, as the balers sold by Defendant to Plaintiff were installed in Plaintiff's stores throughout the United States. (*See id*. at 4.) But the alleged conduct underlying the injuries—including the design, manufacture, and sale of defective balers without adequate instructions or warnings—occurred in Minnesota and form the crux of Plaintiff's complaint against Defendant. (*See generally* Dkt. No. 1-2.) Further, although Plaintiff's principal place of business is in Washington, Defendant, the alleged bad actor, maintains its principal

place of business in Minnesota. (*Id*. at 1.) Thus, the balance of contacts indicate that Minnesota has the most significant relationship to Plaintiff's claim for punitive damages. *See Singh*, 210 P.3d at 340–41. Moreover, even if the contacts were balanced between Minnesota and Washington, Minnesota has strong public policy and governmental interests in enforcing its punitive damages rules against those whose conduct within its borders merits the imposition of such sanctions, whereas Washington does not have a readily-discernable interest in protecting such entities. *See Kammerer*, 635 P.2d at 712. Therefore, the Court finds that Minnesota law applies to Plaintiff's claim for punitive damages. *See Singh*, 210 P.3d at 340–41.

### C. Proposed Amendment

Under Minnesota law, "[p]unitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20(a).

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20(b)(1)–(2). To constitute deliberate disregard, the party must act "with malicious, willful, or reckless disregard for the rights of others." *Freeland v. Fin. Recovery Servs., Inc.*, 790 F. Supp. 2d 991, 994 (D. Minn. 2011) (quoting *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 268 (Minn. 1992)). Evidence is clear and convincing where it "is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights and safety of others." *Id*. at 995 (quoting *Olson v. Snap Prod., Inc.*, 29 F. Supp. 2d 1027, 1036 (D. Minn. 1998)).

Under Minnesota law, a party must not seek punitive damages in its initial complaint; rather, the party must move to amend its complaint to assert a claim for punitive damages. Minn. Stat. § 549.191. The plaintiff must state the applicable legal basis for the punitive damages and

accompany the motion by one or more affidavits establishing the factual basis for the claim. *Id*. "[I]f the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages." *Id*. Under the statute, prima facie evidence "is that evidence which, if unrebutted, would support a judgment in that party's favor." *Freeland*, 790 F. Supp. 2d at 994 (quoting *Olson*, 29 F. Supp. 2d at 1034).[3] "Claims for punitive damages brought in federal court that are premised on state law causes of action must conform to the requirements of Minn. Stat. §§ 549.191 and 549.20 (2008)." *Freeland*, 790 F. Supp. 2d at 994.

Under Minnesota law, "punitive damages are not recoverable under a strict products liability theory for property damage . . . ." *Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226, 228 (Minn. 1982). In *Eisert*, the Minnesota Supreme Court noted that "[w]here the injury is limited to property damage, the public interest in punishment and deterrence is largely satisfied by the plaintiff's recovery of compensatory damages." *Id*. at 229. The Minnesota Supreme Court later held that a party may not seek punitive damages in a product liability action where the only damage is to property. *See Indep. Sch. Dist. No. 622 v. Keene Corp.*, 511 N.W.2d 728, 732 (Minn. 1994). Subsequently, the Minnesota Supreme Court stated that, "While *Eisert* and *Keene* reflect an intent to control escalating lawsuits and awards in product liability actions where the only damage is to property, other claims of property damage may be protected through an award of punitive damages," and therefore held that "a plaintiff may seek punitive damages in an action for intentional damage to property where the only damage is to property, subject to the limitations of section 549.20." *Jensen v. Walsh*, 623 N.W.2d 247, 251 (Minn. 2001). The

---

[3] Defendant asserts that Plaintiff's proposed punitive damages amendment is procedurally defective because Plaintiff asserted its claim for punitive damages in its complaint. (Dkt. No. 22 at 1, 11.) Plaintiff's complaint gave Defendant notice of Plaintiff's intent to seek punitive damages under Minnesota law, pursuant to Washington Superior Court Civil Rule 44.1. (Dkt. No. 1-2 at 17.) The Court declines to find that Plaintiff's provision of notice to Defendant pursuant to Washington Superior Court Civil Rule 44.1 renders its proposed amendment procedurally defective under Minn. Stat. § 549.191.

Minnesota Supreme Court noted that, "To the extent that *Keene* can be construed to bar punitive damages in an action for intentional damage to property where the only damage is to property, it is overruled." *See id*. at 251 n.4. The Minnesota Supreme Court did not overrule its prior holding in *Eisert*. *See id*. at 250–52.

In support of its proposed punitive damages claim, Plaintiff asserts that Defendant placed its dangerous and defective balers into the stream of commerce without properly inspecting them or knowingly sold defective balers to Plaintiff and others. (Dkt. No. 19 at 12; *see also id*. at 38) (Plaintiff's proposed amended complaint). Plaintiff further alleges that Defendant intentionally withheld information about the manufacturing defect in its balers from Plaintiff. (*Id*. at 12–13, 38.) Thus, the bases of Plaintiff's claim for punitive damages sound in product liability law. (*See id*.; *see also* Dkt. No. 1-2 at 1.) But Plaintiff has not identified a personal injury arising from Defendant's allegedly dangerous and defective products. (*See generally* Dkt. No. 1-2; *see also* Dkt. Nos. 19 at 2, 20 at 2); *Eisert*, 314 N.W.2d at 228. And Plaintiff has not otherwise established by clear and convincing evidence that Defendant intentionally damaged Plaintiff's property. (*See generally* Dkt. No. 1-2; *see also* Dkt. No. 19 at 11–13, 38); *Jensen*, 623 N.W.2d at 251. Therefore, Plaintiff has not established a legal or factual basis for recovery of punitive damages under Minnesota law based on Defendant's allegedly defective balers, *see* Minn. Stat. § 549.191, and Plaintiff's motion to amend its complaint to add a claim for punitive damages is futile. *See* Fed. R. Civ. P. 15(a)(2); *Foman*, 371 U.S. at 182.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend its complaint to add a claim for punitive damages (Dkt. No. 19) is DENIED. Defendant's cross-motion for partial summary judgment on Plaintiff's claim for punitive damages (Dkt. No. 22) is DENIED as moot.

//
//
//

1. DATED this 30th day of July 2019.

*John C. Coughenour*
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C18-1461-JCC
PAGE - 9